UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
E&S REALTY OF ROCKLAND, LLC,

       Plaintiff,

   - against -

EXXON MOBILE CORPORATION, f/k/a
EXXON CORPORATION and f/k/a MOBIL
CORPORATION, and DOES 1 through 24,

       Defendants.            04 Cv. 1865 (CLB)
-----------------------------------------------------------x
EXXON MOBILE CORPORATION,       *Memorandum and Order*

       Third-Party Plaintiff,

   - against -

DUTCHESS TERMINALS, INC., SAM'S
TOWING AND AUTOMOTIVE, EDWARD
AND HERBERT KIMELMAN d/b/a KIMY'S
GARAGE, INC.,

       Third-Party Defendants.
-----------------------------------------------------------x
Brieant, J.

    Before this Court for discussion is ExxonMobil's motion for summary judgment

(Doc. 26). The motion was fully submitted on January 6, 2006.

    This is a civil action filed under the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980 ("CERCLA") in which Plaintiff seeks reimbursement

costs and other relief from Defendant ExxonMobil. Plaintiff contends that ExxonMobil is

responsible for the release of hazardous substances on Plaintiff's property and seeks

1

reimbursement from ExxonMobil for the cost of remedying the pollution, loss of business, and attorney's and expert's fees. Plaintiff also seeks a declaratory judgment pursuant to § 113(g)(2) of CERCLA on liability that will be binding in future actions to recover further costs incurred as a result of ExxonMobil's contamination to its property. Plaintiff further alleges common law negligence, breach of fiduciary duty, and reckless breach of fiduciary duty against ExxonMobil. Plaintiff also seeks punitive damages.

*History of the Property*

The property at issue ("Property") is located in Spring Valley, New York. It is surrounded by both residential and commercial properties, and the Spring Valley Creek is adjacent to it. This Creek leads to the Hudson River. Plaintiff E&S Realty of Rockland, LLC, is the current owner of this Property. In 1957, a retail gasoline station owned and operated by Ed and Herbert Kimelman, d/b/a "Kimy's Garage," ("Kimy's") existed on the Property. Kimy's purchased gasoline initially from Gurran Oil Company, not a party to this case. Gurran installed two 2,000 gallon tanks and two 550 gallon tanks on the Property and leased them to Kimy's. The papers presented do not show that Gurran Oil had any relationship with ExxonMobil or its corporate predecessors.

From 1963 through the end of 1983, ExxonMobil's predecessor in interest, Humble Oil, delivered gasoline to Kimy's. In 1968, Humble Oil installed three additional tanks on the Property, one 4,000 gallon steel tank and two 6,000 gallon steel tanks.

2

On October 14, 1984, ExxonMobil sold these three tanks originally installed by Humble Oil to Kimy's, as well as the pumps, lifts, air compressors, and poles without lights, "as is." This Bill of Sale notes that all three of the tanks tested tight at the time of sale. ExxonMobil's business relationship with the Property ceased on that date. Since that time, and until recently, the Property has been in continuous use as a gasoline station and an automobile repair facility. During the 1980's, the station sold "Citgo" and then "Cenco." The station had last been operated as a "Getty" station. At least since the 1960's until the recent past, an automotive repair shop had been operating in a building at the rear of the Property, the most recent being, "Sam's Autobody Service Center." E&S Realty and Sam's Towing have the same principal. See Plaintiff's Exhibit F.

On October 18, 1984, Ed Kimelman sold the Property to Silver State Realty Corp. The Property was resold to Diane Yensco in 1988 and then to Sam Naemit in 1989. Mr. Naemit, a principal of Plaintiff E&S Realty, transferred title in 2001 to E&S Realty.

*Discovery of Contamination*

On January 4, 1999, pursuant to an EPA letter, Plaintiff was required to "upgrade, replace, or close" underground storage tanks on the Property. An additional demand letter was sent in March 1999. In 1999, Mr. Naemit upgraded the station and replaced the underground storage tanks in compliance with New York State regulations. While undertaking to remove the three existing steel tanks that had been installed by Humble Oil in 1968 and replace them with new fiberglass tanks (one 10,000 gallon tank and one 8,000 gallon tank), Plaintiff discovered

3

contaminated soil. The New York State Department of Environmental Conservation ("DEC") was notified and assigned Spill No. 99-00046 to the Property. Plaintiff excavated some contaminated soil, and at the direction of the DEC, installed three monitoring wells on the Property. One of these wells remains open because the land in that area is still contaminated.

In addition to discovering contaminated soil, Plaintiff contends that two unknown and abandoned tanks were also discovered. These tanks once belonged to ExxonMobil, were extremely corroded, and caused the leakage of contaminants during the years that ExxonMobil owned the station. *See* Complaint at ¶ 10. To date, Plaintiff has spent $226,514.00 to remedy the contamination of the Property, and expects to expend additional amounts.

ExxonMobil contends that a total of five, and not two, unknown and abandoned tanks were discovered; that the leakage of contaminants was likely from one of the Gurran Oil tanks, and not from the Humble Oil/ExxonMobil tanks; and that ExxonMobil never owned the Property, or station.

*Expert Opinions*

On August 8, 2005 Plaintiff's expert, James S. Smith, produced a report opining that "Exxon is responsible for the contamination." The report does not offer any facts or observations in support of the conclusion. *See* Plaintiff's Exhibit M.

On September 14, 2005 ExxonMobil's expert, Peter G. Robelen, produced a report

4

opining that "there is no factual evidence to suggest that ExxonMobil is responsible for the contamination detected at the subject site." Defendant's Exhibit O. The report states the following in relevant part:

> The gasoline additive MTBE was detected in several ground water samples at concentrations indicative of a release. MTBE was not used in ExxonMobil fuels in this area until at least 1987, approximately three years after ExxonMobil left the site. Therefore, the release of MTBE containing gasoline must have occurred after ExxonMobil left the site.
>
> Site soils consist of coarse-grained, unconsolidated sediments (sands and gravels)...Consequently, the predominance of these soils at the site can result in rapid attenuation of petroleum releases indicating that contamination currently on-site is more likely from a more recent release, as an older release would have attenuated.
>
> In his deposition, Mr. Smith (Plaintiff's expert) repeatedly referred to lead data as the reason he concluded that the contamination was ExxonMobil's responsibility. The lead data to which Mr. Smith refers is not associated with a release of the type of organic lead compounds that was used in gasoline, but rather, elemental lead in soils at concentrations that occur naturally. *See* Defendant's Memorandum of Law.

*Summary Judgment Standard*

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If "reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson* at 255. If, as to the issue "on which summary judgment is

sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994).

*CERCLA*

CERCLA is "a comprehensive federal law governing the remediation of sites contaminated with pollutants." *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.,* 423 F.3d 90. CERCLA was intended to "encourag[e] the timely cleanup of hazardous waste sites," and "plac[e] the cost of that [cleanup] on those responsible for creating or maintaining the hazardous condition." *See Id.* (*quoting Control Data Corp. v. S.C.S.C. Corp.,* 53 F.3d 930, 935-36 (8th Cir. 1995) (internal quotations marks and citations omitted); *see also Key Tronic Corp. v. United States*, 511 U.S. 809, 819 n.13, 128 L. Ed. 2d 797, 114 S. Ct. 1960 (1994) ("'CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others.'") (*quoting FMC Corp. v. Aero Industries, Inc.*, 998 F.2d 842, 847 (1993)); H.R. Rep. No. 96-1016(I), at 17 (1980), reprinted in 1980 U.S.C.C.A.N. 6119, 6120 (stating that CERCLA's purposes include furthering the recovery of costs for cleanup of hazardous waste sites "from persons liable therefor" and inducing those persons "voluntarily to pursue appropriate environmental response actions").

A prima facie claim under CERCLA requires a plaintiff to establish: (1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff

incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan established under the Act and administered by the EPA in order to remediate hazardous substance release sites throughout the nation. *See New York v. Shore Realty*, 759 F.2d 1023, 1043 (2d. Cir. 1985).

The Plaintiff's CERCLA claim against Exxon Mobil for leaked petroleum fails. Petroleum is not considered a hazardous material under CERCLA. *See* 50 Fed. Reg. 13460 (April 4, 1985). EPA interprets the petroleum exclusion to apply to materials such as crude oil, petroleum feedstocks, and refined petroleum products, even if a specifically listed or designated hazardous substance is present in such products. "Waste oil" is not included in the petroleum exclusion, although waste oil consists, in part, of petroleum.

Plaintiff has established that the site was a facility within the meaning of the statute. Plaintiff has also established that there may have been a release of waste oil, a hazardous substance, at the facility, and that the Plaintiff has incurred costs in responding to this release. The unresolved issue before the Court is whether or not Defendant is a "responsible party" within the meaning of the statute.

*"Responsible Parties" As Outlined in 9706:*

The relevant provision defining a responsible person in 42 U.S.C. 9706(a) a responsible party under CERLCA is:

> [A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment,

7

> of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances. 42 U.S.C. 9706(a)(3).

ExxonMobil contends that it cannot be considered a "responsible person" as defined by statute, *supra*. This presents an open issue in our Circuit. Some case law suggests that a party such as ExxonMobil might be considered a responsible party: "We note that because the definition of disposal includes 'leaking,' some courts have concluded that prior owners are liable if they acquired a site with leaking barrels even though the prior owner's actions are purely passive. We express no opinion on this issue [in this case]." *ABB Industrial Systems v. Prime Technology, Inc.* 120 F.3d 351 (2d. Cir. 1997) *(citing Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 844-46 (4th Cir. 1992)).

ExxonMobil contends that even if this Court were to consider ExxonMobil as "responsible party" within the meaning of the statute, there is no set of facts under which it could be held liable because the leaked waste oil and contaminated soil was found near the tanks which were installed by Gurran Oil in 1957, and not near an ExxonMobil tank. Plaintiff contends that the contaminated soil is where ExxonMobil had its tanks.

Plaintiff has offered no evidence to support this conclusion, and therefore has not raised a genuine issue of material fact. Plaintiff simply argues that because there is contamination on his site, it must be Defendants' fault: "Plaintiff asserts that ExxonMobil must not have actually filled those four [Gurran, soon to be abandoned] tanks with sand and water, but rather buried them, filled with leaded gasoline and waste oil." Def. Reply at 8. The Court is presented with no

8

sufficient reason to believe that ExxonMobil did anything other than make the former Gurran Oil tanks non-functional in the appropriate manner, specifically, filling them with sand and water. Of the five abandoned tanks found on the site, only one of them could have, possibly, been one of the original Gurran tanks, and there is nothing in the record to show that any waste oil was discovered near this tank.

ExxonMobil does not sell or deliver waste oil and never did. Waste oil is a pollutant generated by the operator of an auto repair facility or a petroleum retailer.

Because there is no evidence connecting ExxonMobil with the waste oil found at the site, summary judgment should be and hereby is granted to defendant. The action is also dismissed against the John Doe defendants, and the Third Party Complaint is dismissed without prejudice.

The Clerk shall file a final judgment.

X

    X

        X

           X

SO ORDERED.

SO ORDERED.

Dated: White Plains, New York
      March 9, 2006

                                                                      Charles L. Brieant, U.S.D.J.